UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
WANDY JOSE RODRIGUEZ RODRIGUEZ,

                              Plaintiff,

          -against-

LUCKY LOTTO GROCERY DELI CORP. d/b/a THE
CORNER STORE, NY DELI GRILL CORP.,
FLATBUSH GARDEN DELI CORP., SALEH A.
MUTHANA, and SADDAM  GHARAMA,

                             Defendants.
-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

No. 22-CV-2256-ARR-JRC

JAMES R. CHO, United States Magistrate Judge:

       Plaintiff Wandy Jose Rodriguez Rodriguez ("Rodriguez" or "plaintiff") brings this wage-and-hour action against defendants Lucky Lotto Grocery Deli Corp. d/b/a The Corner Store ("Lucky Lotto"), NY Deli Grill Corp. ("NY Deli"), Flatbush Garden Deli Corp. ("Flatbush") (together, "corporate defendants"), Saleh A. Muthana ("Muthana") and Saddam Gharama ("Gharama") (together, "individual defendants") (collectively, "defendants" or "defaulting defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") § 650 *et seq.  See generally* Am. Compl., Dkt. 22.  Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered defendants' default on October 16, 2023.  *See* Dkt. 33. Currently pending before this Court, on a referral from the Honorable Allyne R. Ross, is plaintiff's motion for default judgment, seeking unpaid minimum and overtime wages, spread of hours premiums, statutory penalties and liquidated damages.  *See* Order Referring Motion dated November 8, 2023; Motion for Default Judgment, Dkt. 34; Proposed Judgment, Dkt. 34-9; Damages Calculation ("Damages Calc."), Dkt. 34-4.

       For the reasons described below, this Court respectfully recommends granting, in part,

plaintiff's motion for default judgment.

## Factual Background

The following facts are taken from the Amended Complaint (Dkt. 22), plaintiff's affidavit (Dkt. 34-7) and plaintiff's testimony adduced at a hearing held on January 17, 2024 (Dkt. 39).

Each of the corporate defendants (Lucky Lotto, NY Deli, and Flatbush) were "incorporated and/or authorized to do business in the State of New York." Am. Compl. ¶¶ 5, 7, 9. Defendants Gharama and Muthana were "manager[s] of Defendant Lucky Lotto and/or NY Deli and/or Flatbush." *Id*. ¶¶ 11, 12. Gharama and Muthana "had the power to determine employment practices at Lucky Lotto, NY Deli and/or Flatbush, including determining compensation, benefits, and setting wage rates . . . [,] the power to hire and fire employees . . . and to otherwise control the terms and conditions of employment." *Id*. ¶¶ 23, 24, 27, 28.

From October 2015 until January 2017, and again from December 2017 until late August 2021, plaintiff worked at defendants' business, known as "The Corner Store," located at 1864 Nostrand Avenue, Brooklyn, New York. *See id.* ¶¶ 13, 16, 19, 30, 31; Affidavit of Wandy Jose Rodriguez Rodriguez ("Rodriguez Aff.") ¶¶ 3, 4, Dkt. 34-7. Plaintiff engaged in food preparation, stocking shelves, dishwashing, staffing the cash register and cleaning. *See* Am. Compl. ¶ 33; Rodriguez Aff. ¶ 5. Plaintiff regularly worked from 5:00 a.m. to 3:00 p.m. (10 hours per day), seven days per week, for a total of 70 hours per week. *See* Am. Compl. ¶¶ 36-37; Rodriguez Aff. ¶¶ 6, 7. In addition, plaintiff "often worked more hours when other employees were late or did not show up," which led to plaintiff typically working an extra 10 hours per week, for a total of 80 hours worked per week. *See* Am. Compl. ¶¶ 38-39; Rodriguez Aff. ¶¶ 8, 9.

From October 2015 to January 2017, defendants paid plaintiff $600 per week.  *See* Am. Compl. ¶ 40; Rodriguez Aff. ¶ 11.  From December 2017 to April 2021, defendants paid plaintiff $700 per week.  *See* Am. Compl. ¶ 41; Rodriguez Aff. ¶ 13.  From April 2021 to late August 2021, defendants paid plaintiff $800 per week.  *See* Am. Compl. ¶ 42; Rodriguez Aff. ¶ 14. Defendants paid plaintiff in cash each week at the rates above, regardless of how many hours he worked that week.  *See* Rodriguez Aff. ¶ 15.  Defendants failed to pay plaintiff an overtime premium for those hours he worked in excess of 40 per week, failed to pay him for spread-of-hours and never provided plaintiff with a paystub or wage statement.  *See* Am. Compl. ¶¶ 45-47; Rodriguez Aff. ¶¶ 16, 18, 19.

Plaintiff has no knowledge of which corporate entity actually employed him at any given time.  *See* Rodriguez Aff. ¶ 20; Transcript of hearing held on January 17, 2024 ("Hearing Tr.") at 15, 17-19, Dkt. 39.  Based on the records of New York's Department of State, Flatbush was an active corporation from May 12, 2014 until June 12, 2018.[1]  *See* Dkt. 34-5 at ECF page 4.[2]  NY Deli was incorporated on April 12, 2018 and was voluntarily dissolved as of May 21, 2023.  *See* Dkt. 34-5 at ECF page 3.  Lucky Lotto was incorporated on February 18, 2021 and is currently an active corporation.  *See* Dkt. 34-5 at ECF page 2.

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the online Corporation and Business Entity Database maintained by the New York State Department of State.  *See Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963, 2019 WL 1549033, at *4 & n.5 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).

[2] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

**Procedural Background**

Plaintiff alleges that defendants failed to pay him minimum and overtime wages pursuant to the FLSA and NYLL (Counts I, II, III, IV); failed to provide a wage notice at the time of hire and detailed paystub information on paydays, under the Wage Theft Prevention Act ("WTPA"), *see* N.Y. Labor Law §§ 195(1)(a), 195(3) (Count V); and failed to pay compensation under New York's spread of hours provision (Count VI).

On April 20, 2022, plaintiff commenced this action against defendants Flatbush, Lucky Lotto, NY Deli, Hussein Gharama and Doe Defendants I, II, and III (Hamoudi, Montana, and Sadaam). *See* Dkt. 1. Plaintiff first moved for default judgment on November 3, 2022, *see* Dkt. 15, which the Court denied for, *inter alia*, non-compliance with Local Rule 7.1, *see* Order dated December 22, 2022. On January 17, 2023, plaintiff filed an amended motion for default judgment. *See* Dkt. 17. At a hearing held on April 20, 2023, the Court identified certain deficiencies with plaintiff's amended motion, including the claims against then-defendant Hussein Gharama, the effectiveness of service on the corporate defendants, and the allocation of damages against the various corporate defendants. *See* Minute Entry dated April 20, 2023; Order dated April 20, 2023. In response, on May 12, 2023, plaintiff withdrew the motion for default judgment and filed an Amended Complaint against defendants Lucky Lotto, NY Deli, Flatbush, Saleh A. Muthana and Saddam Gharama. *See* Dkts. 21, 22.

On June 9, 2023, plaintiff served each of the corporate defendants with the Amended Complaint, via the New York Secretary of State. *See* Dkt. 26 at ECF page 2; Dkt. 27 at ECF page 2; Dkt. 28 at ECF page 2. On that same day, plaintiff served defendant Gharama at two locations, 1450 and 1864 Nostrand Avenue, by leaving process with an individual who identified himself as a co-worker of Gharama. *See* Dkt. 29. Similarly, on June 9, 2023, plaintiff served

defendant Muthana at two locations, 1861 and 1864 Nostrand Avenue, by leaving process with an individual who identified himself as a co-worker of Muthana.  *See* Dkt. 30.

Based on the affidavits of service, this Court finds that plaintiff properly served the corporate defendants.  Rule 4 of the Federal Rules of Civil Procedure permits service on a corporation in a manner authorized by the law of the forum state.  *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  New York law provides for service of process on a corporation by personally delivering process to New York's Secretary of State.  *See* N.Y. Bus. Corp. Law § 306(b)(1).  In addition, Rule 4 provides for service on a "corporation . . . by delivering a copy of the summons and of the complaint to an officer, a managing agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  The New York Secretary of State qualifies as an "agent authorized by appointment or by law to receive service of process" under Rule 4.  *See Dacas v. Duhaney*, No. 17-CV-3568, 2023 WL 6297530, at *5 (E.D.N.Y. Sept. 8, 2023), *report and recommendation adopted*, 2023 WL 6294227 (E.D.N.Y. Sept. 27, 2023).  Importantly, service on defendants Flatbush and NY Deli via the Secretary of State was effective even though those two corporations have been dissolved.  *See id.; Fan*, 2019 WL 1549033, at *4; *see also* N.Y. Bus. Corp. Law § 1006(a)(4) ("[a] dissolved corporation . . . may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it.").

Rule 4 also permits service of process on an individual in accordance with the law of the forum state -- here, New York.  *See* Fed. R. Civ. P. 4(e)(1).  Under New York law, service on a natural person may be accomplished "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and . . .

by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]" N.Y. C.P.L.R. § 308(2). Plaintiff herein purports to have served defendants Muthana and Gharama in compliance with section 308(2) of New York's Civil Practice Law and Rules (the "CPLR") by leaving copies of the summons and Amended Complaint with "Mr. Smith (Cashier) . . . [who] identified himself as the co-worker/employee of the defendant[s]," at 1864 Nostrand Avenue, the location at which plaintiff worked, and by thereafter mailing copies to each defendant at the same address. *See* Dkt. 29 at ECF page 2; Dkt. 30 at ECF page 2; *see also* Letter with Supplementary Information, Dkt. 37. Since the affidavits of service are undisputed, this Court concludes that defendants Muthana and Gharama were properly served at the premises of Lucky Lotto under section 308(2) of New York's CPLR.[3] *See Nevelskiy v. Adv.*

---

[3] New York courts have construed "actual place of business" to include (1) a place where the defendant regularly transacts business or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by him with that place of business. *See Fan*, 2019 WL 1549033, at *4 n.4. Moreover, a defendant "can have more than one actual place of business for purposes of C.P.L.R. [§] 308." *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18-CV-5448, 2020 WL 2115409, at *3 (S.D.N.Y. May 4, 2020). Here, the Court takes judicial notice of the online database maintained by the New York State Liquor Authority. *See J&J Sports Prods., Inc. v. Brentwood Veteran War Mem'l, Inc.*, No. 17-CV-6833, 2019 WL 4126469, at *12 (E.D.N.Y. Aug. 30, 2019). According to the database, defendant Gharama serves as the principal of Lucky Lotto, which further suggests that the location where he was served is his actual place of business. *See Joe Hand Promotions, Inc. v. Crisis Bar LLC*, No. 21-CV-6563, 2023 WL 2969308, at *5 (E.D.N.Y. Jan. 19, 2023); *Jimenez v. Bosie, LLC*, No. 19-CV-11570, 2021 WL 2941916, at *5 (S.D.N.Y. July 12, 2021) (finding that defendant was served at his actual place of business under federal and New York law because, *inter alia*, he was listed as a principal on its liquor license).

In addition, the Amended Complaint alleges that "at all relevant times, Defendant Muthana was actively involved in managing the day-to-day operations of Lucky Lotto, NY Deli and/or Flatbush." Am. Compl. ¶ 29. However, plaintiff appeared to testify that when his employment with defendants ended, Muthana was no longer running the deli on a day-to-day basis, but was still an owner. *See* Hearing Tr. at 17. As a co-owner of the business, the Court concludes that Muthana was served at his actual place of business. *See Muratov v. Mama Shnitzel Inc.*, No. 22-CV-3785, 2023 WL 5152511, at *5 (E.D.N.Y. July 21, 2023) (service under section 308(2) is adequate where defendant is alleged to be "owner, officer" of corporation located where service

*Pro. Grp., Inc.,* No. 23-CV-2364, 2024 WL 2745190, at *8 (E.D.N.Y. May 29, 2024)

("[B]ecause Ash is alleged to have owned and operated APG, as evidenced by the affidavit of

service, and the fact that the John Doe co-worker meets the requirements of a person of suitable

age and discretion, this Court respectfully recommends a finding that service on Ash was proper

in this case."); *Xiao Hong Wang v. Chi Kei Li*, 95 N.Y.S.3d 51, 53 (1st Dep't 2019) (holding that

affirmation of service entitled plaintiff to presumption that service upon a "person of suitable age

and discretion" was at defendants' actual place of business without establishing that the person

was "actually a coworker of defendants").

Defendants have failed to answer the Amended Complaint or otherwise appear in this

case. On October 16, 2023, the Clerk entered a Certificate of Default on the Amended

Complaint as to all defendants. *See* Dkt. 33. On November 7, 2023, plaintiff filed the instant

motion for default judgment, which Judge Ross referred to this Court. On January 17, 2024, the

Court held an evidentiary inquest hearing, at which plaintiff testified. *See* Minute Entry dated

January 17, 2024. To date, defendants have not responded or otherwise appeared in this action.

## Discussion

### I.    Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a

default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). First, the

Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the

Clerk's record of the case. Fed R. Civ. P. 55(a) ("When a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

---

is made); *Jimenez*, 2021 WL 2941916, at *5 (finding service proper at actual place of business
where service is made at business co-owned by defendant).

affidavit or otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed R. Civ. P. 55(a), (b)(2).

Here, on October 16, 2023, the Clerk of the Court entered a certificate of default against the defaulting defendants -- Lucky Lotto, NY Deli, Flatbush, Muthana and Gharama -- after they failed to appear. *See* Dkt. 33. To date, defendants have not appeared or moved to vacate the entry of default.

Whether or not a default judgment is issued is within the discretion of the court. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments 'are generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be

entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. at 95. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor"). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Here, the defaulting defendants did not respond to the Amended Complaint despite proper service.  Plaintiff filed affidavits confirming service of the motion for default judgment, this Court's order scheduling a hearing on the motion, and the minute entry following the motion hearing.  *See* Dkts. 34-10, 36, 38.  Defendants have nonetheless failed to respond to plaintiff's motion for default judgment or otherwise appear in this action.  Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Amended Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under federal and state law.

## II.    Liability

Plaintiff moves for default judgment on his claims under the FLSA and the NYLL.  For the reasons set forth below, this Court concludes that plaintiff sufficiently alleges facts giving rise to liability.

### A.    Statute of Limitations

As an initial matter, the Court must determine whether plaintiff's claims are timely.  Plaintiff asserts that the earliest date from which he can recover damages against defendants is April 21, 2016, based on the filing date of the original Complaint and commencement of the action, April 20, 2022.  *See* Damages Calc. at 1, Dkt. 34-4.

The FLSA contains a two-year statute of limitations for non-willful violations, and a three-year statute of limitations for willful violations.  *See* 29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies."  *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citation omitted); *see also Gunawan v. Sake Sushi Rest.*, 897 F.

Supp. 2d 76, 87 (E.D.N.Y. 2012).  Because defendants have defaulted, a three-year statute of limitations applies here.

Unlike the FLSA, "[a]ny action to recover upon a liability imposed by NYLL's Articles 6 and 19 must be commenced within six years."  *Martinez v. 2009 Bamkp Corp.*, No. 18-CV-7414, 2019 WL 7708607, at *4 (S.D.N.Y. Dec. 10, 2019) (quotation marks and citation omitted), *report and recommendation adopted*, 2020 WL 409691 (S.D.N.Y. Jan. 23, 2020); *see also* N.Y. Lab. Law §§ 198(3), 663(3).

Where, as here, a plaintiff files an amended pleading, the Court determines the limitations period based on the filing date of the original complaint so long as the amended complaint relates back thereto.  *See* Fed. R. Civ. P. 15(c)(1); *Chaohui Tang v. Wing Keung Enters., Inc.*, 210 F. Supp. 3d 376, 409-10 (E.D.N.Y. 2016).  An amended complaint "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out -- or attempted to be set out -- in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."  *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (quotations and citations omitted).

Plaintiff's Amended Complaint contains the same claims and factual allegations as the original Complaint.  Other than modifying the names of some of the individual defendants, the Amended Complaint is virtually identical to the original Complaint.  As a result, the claims contained in the Amended Complaint relate back to the original Complaint for purposes of calculating the statute of limitations.  *See, e.g., Chaohui Tang*, 210 F. Supp. 3d at 409-10 (finding relation back of plaintiffs' FLSA and NYLL claims where amended complaint

contained "essentially the same claims and factual allegations that they set forth in their original complaint").

Where plaintiff amends the complaint to change the name of a party, the original allegation must also satisfy the criteria to relate back under Rule 15(c)(1)(C):

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). A Rule 15(c)(1)(C) "'mistake' in identifying a defendant occurs when it is the result of misnomer or misidentification." *Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 125 (E.D.N.Y. 2003) (internal quotation marks and citation omitted). If these prerequisites are satisfied and the amened claim arose out of the same conduct, transaction or occurrence as the original complaint, then an amendment changing a party against whom a claim is asserted will relate back.

Even where a plaintiff's claims do not relate back under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1); *see Jordan v. City of New York*, No. 15-CV-6364, 2016 WL 1383534, at *2 (S.D.N.Y. Apr. 7, 2016). Because New York law provides a "more forgiving principle of relation back" compared to Rule 15(c)(1)(C), it may allow for relation back even when it is not allowed under the Federal Rules. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Under section 1024 of the New York CPLR, "[a] party who is ignorant, in whole or in part, of the name or identity of

a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known.  If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly."  N.Y. C.P.L.R. § 1024.

In the original Complaint, plaintiff put on notice defendants Saddam Gharama and Saleh A. Muthana by naming as defendants "Hussein Gharama" and "John Doe Defendant II (Montana)," and describing their roles as managers at The Corner Store.  *See* Compl. ¶¶ 13, 14. Plaintiff complied with Rule 15 and C.P.L.R. § 1024 by designating so much of their names and identities as he knew at the time, and filing an amended complaint based on further investigation. *See Sun v. Li Ya Nail Spa Inc.*, No. 18-CV-6609, 2021 WL 9507723, at *10 (E.D.N.Y. Aug. 3, 2021) (allowing relation back where plaintiff substituted "Lili Gao a/k/a Li Li Gao" for "Jane Doe, a/k/a Lily Gao"); *Godlewska v. HDA*, No. 03-CV-3985, 2006 WL 1422410, at *5 (E.D.N.Y. May 18, 2006) (allowing relation back where plaintiff substituted "Eva Friedman for Jane Doe 'Mrs. Friedman'").  Particularly here, where defendants' default waives the affirmative defense of statute of limitations, the Court concludes that plaintiff has properly based his calculations on the filing date of the original Complaint.  *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 177 (E.D.N.Y. 2019); *Gunawan*, 897 F. Supp. 2d at 87.

Plaintiff filed the initial Complaint on April 20, 2022.  *See* Dkt. 1.  Plaintiff, therefore, may recover damages arising out of his employment going back six years under the NYLL, or three years under federal law.  *See Luna v. Gon Way Constr.*, No. 16-CV-1411, 2017 WL 835321, at *9 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).  The Court adopts the relevant period for calculating damages as proposed by plaintiff.  Here, plaintiff seeks to recover damages for NYLL violations from the

period April 21, 2016 (within the six-year limitations period from the filing of the initial Complaint on April 20, 2022) to the end of his employment in August 2021, and for FLSA violations from April 21, 2019 (within the three-year limitations period) to August 2021.

**B.    FLSA**

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019). To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists and (2) the employment falls under the FLSA's individual or enterprise coverage provisions. *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

**1.    Employer/Employee Relationship**

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a). The FLSA further defines the term "employee" as "any individual employed by an employer." *Id.* § 203(e)(1). Absent a statutory exemption, an employee is protected by the FLSA if they worked for a covered employer. "Because the statute

defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

"The FLSA contemplates that more than one employer may be responsible for violations of the statute." *Rigoberto Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001, 2018 WL 6718766, at *4 (E.D.N.Y. Nov. 7, 2018), *report and recommendation adopted*, 2018 WL 6517111 (E.D.N.Y. Dec. 11, 2018).  Under the FLSA, multiple corporate entities can be liable as the "employer" under "a joint employer theory based on the theory that they operate as a single enterprise with significant interrelation of operations." *Yunhan Duan v. Studio M Bar & Lounge Inc.*, No. 20-CV-2240, 2024 U.S. Dist. LEXIS 18201, at *13 (E.D.N.Y. Jan. 31, 2024) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 29077 (E.D.N.Y., Feb. 20, 2024); *see Wuzi Jiao v. Kitaku Japanese Rest., Inc.*, No. 16-CV-2694, 2020 WL 2527588, at *7 (E.D.N.Y. Mar. 13, 2020), *report and recommendation adopted*, 2020 WL 2523109 (E.D.N.Y. May 18, 2020).  "[S]eparate corporations under common ownership and management are a common example of such a single integrated enterprise." *Rios v. BBQ Chicken Don Alex, Inc.*, No. 16-CV-6630, 2018 WL 264512, at *3 (E.D.N.Y. Jan. 2, 2018).  Under that test, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Apolinar v. R.J. 49 Rest., LLC*, No. 15-CV-8655, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014)); *accord Chen v. Hunan Manor Enterps.*, No. 17-CV-802, 2023 WL 5574854, at *6 (E.D.N.Y. Aug. 29, 2023).  Where this theory applies, "an employee, who is not technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal

employer but also on another entity comprising part of the single integrated employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005); *see Chen*, 2023 WL 5574854, at *6; *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017).

Although plaintiff has not expressly invoked the single integrated enterprise theory, he argues that defendants are jointly and severally liable and his factual allegations are consistent with the application of that doctrine. The three corporate defendants were active during different periods of time during plaintiff's employment at The Corner Store from October 2015 until January 2017 and from December 2017 until August 2021. *See* Am. Compl. ¶¶ 30-31. Flatbush was incorporated on May 12, 2014 and has been inactive since June 12, 2018; NY Deli was incorporated on April 12, 2018 and was voluntarily dissolved on May 21, 2023; and Lucky Lotto was incorporated on February 18, 2021 and remains an active corporation. Thus, while Flatbush and NY Deli overlapped for approximately two months, NY Deli and Lucky Lotto were active concurrently for more than two years.

Here, the Court finds that plaintiff's unopposed allegations are sufficient to show that the corporate defendants operated The Corner Store as a single integrated enterprise and that plaintiff was employed by the enterprise. Plaintiff avers that he "worked at Defendants' business known as 'The Corner Store,' located at 1864 Nostrand Avenue in Brooklyn, New York." Rodriguez Aff. ¶ 4. Plaintiff further alleges that each of the corporate defendants "owned (in part or in full) and/or operated and/or managed The Corner Store, located at 1864 Nostrand Avenue." Am. Compl. ¶¶ 13, 16, 19; *see* Rodriguez Aff. ¶ 4[4] ("I believe the store was owned[,]

---

[4] The Court may consider plaintiff's affidavit in evaluating whether plaintiff has established defendants' liability. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr.*, LLC, 779 F.3d 182, 189 (2d Cir. 2015) (a motion for default judgment may be granted based on "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiff[]" with his motion); *Cabrera v.*

operated and/or managed by the various Defendants during the time period relevant to this lawsuit.").

Plaintiff further alleges that the corporate defendants are commonly owned or managed by the same individuals who supervised plaintiff's employment, determined his compensation, set his work schedule, had the authority to hire and fire employees and managed "the day-to-day operations of the deli." *See* Rodriguez Aff. ¶ 21; Am. Compl. ¶¶ 23-29; Hearing Tr. at 15-17 (Gharama and Muthana "run the stores."). Plaintiff alleges that the individuals who managed his employment acted on behalf of the corporate defendants with respect to plaintiff's employment.

In addition, throughout plaintiff's two periods of employment, the name of the deli remained the same -- "The Corner Store." *See* Hearing Tr. at 17-19, 23. This further suggests that the corporate defendants continuously operated the deli at the same location and under the same management, during the entirety of plaintiff's employment. In light of the foregoing facts, the Court finds that the corporate defendants qualify as a single integrated enterprise that is jointly and severally liable for any damages suffered by plaintiff. *See Jiao*, 2020 WL 2527588, at *8 (on motion for default judgment, finding that various corporations are a single integrated entity even though not all of them overlapped with each other or operated during plaintiff's employment); *Mondragon v. Keff*, No. 15-CV-2529, 2019 WL 2551536, at *8-*9 (S.D.N.Y. May 31, 2019) (on motion for default judgment, finding two corporate defendants were plaintiff's joint employers where both corporations did business at the address where plaintiff alleges she

---

*1560 Chirp Corp.*, No. 15-CV-8194, 2017 WL 1289349, at *11 (S.D.N.Y. March 6, 2017) (internal quotation marks and citation omitted) (relying on an affidavit outside the complaint to find that Plaintiff met elements of a FLSA claim on a motion for default judgment), *report and recommendation adopted*, 2017 WL 1314123 (S.D.N.Y. Apr. 6, 2017); *see also* Fed. R. Civ. P. 55(b)(2) ("[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . establish the truth of any allegation by evidence").

was employed), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019); *Ruixuan Cui v. East Palace One, Inc.*, No. 17-CV-6713, 2019 WL 4573226, at *11 (S.D.N.Y. Sept. 20, 2019) (denying defendants' motion for judgment on the pleadings as to overlapping corporate entities which were active during any time of plaintiff's employment).[5]

As to the individual defendants, an employee may simultaneously have multiple employers for purpose of determining responsibility under the FLSA.  There is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374-75 (E.D.N.Y. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).  Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (quoting *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see also Baizan Guerrero*, 2019 WL 4889591, at *4.

---

[5] In light of this Court's finding that the three corporate defendants constitute a single integrated enterprise, the Court need not apportion damages among the three corporate defendants as proposed by plaintiff, *see* Pl. Mem. of Law in Support at 8-10, Dkt. 34-8; Damages Calc. at 2-3. *See Jiao*, 2020 WL 2523109, at *1 (entering judgment jointly and severally against six corporate defendants and one individual found to constitute single integrated enterprise); *see also Su v. Berkshire Nursery & Supply Corp.*, No. 23-CV-275, 2024 WL 2270372, at *4 (S.D.N.Y. May 20, 2024) ("Within a single integrated enterprise, any entity, not just the nominal employer, is subject to joint and several liability for labor law violations.").

When examining the "economic reality" of a particular situation, the following factors are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104-05 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003).

Plaintiff's unopposed allegations are sufficient to conclude that the individual defendants employed plaintiff under the definition of the FLSA. Plaintiff alleges that the individual defendants "had the power to determine employment practices [at the Corner Store]. . . including determining compensation, benefits, and setting wages." Am. Compl. ¶¶ 23, 27. Plaintiff further claims that the individual defendants "manag[ed] the day-to-day operations" and further "had the power to hire and fire employees." Am. Compl. ¶¶ 24-25, 28-29; *see* Rodriguez Aff. ¶ 21. As the "economic reality" factors are satisfied by plaintiff's allegations, albeit conclusory, this Court thus finds that the individual defendants employed plaintiff under the definition of the FLSA. *See Sarmiento Perez v. Comhar Grp.*, No. 19-CV-0964, 2020 WL 1364908, at *3-*4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Baizan Guerrero*, 2019 WL 4889591, at *5; *Rodriguez v. Solares Corp.,* No. 16-CV-3922, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Based on plaintiff's allegations, this Court finds that plaintiff was jointly employed by the individual and corporate defendants. As the Court finds that the individual defendants and

corporate defendants were jointly plaintiff's employers, each defendant is jointly and severally liable under the FLSA for any damages award.  *See Sarmiento Perez*, 2020 WL 1364908, at *4; *Baizan Guerrero*, 2019 WL 4889591, at *5.

### 2.      Whether Plaintiff's Employment was Covered by the FLSA

Next, the Court must determine whether plaintiff's employment falls under the FLSA's individual or enterprise coverage provisions.  The FLSA's minimum wage and overtime provisions apply only to those "employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')."  *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a)); *see Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (*per curiam*).  To properly plead enterprise coverage, a plaintiff must demonstrate that his employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently engaged in commerce or the production of goods for commerce, including "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."  29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see* 29 C.F.R. § 779.238.

Plaintiff's allegations are sufficient to conclude that defendants are subject to the FLSA. First, plaintiff claims that defendants were directly engaged in interstate commerce.  *See, e.g.*, Am. Compl. ¶¶ 6, 8, 10.  Second, plaintiff alleges that defendants had an annual gross volume of sales and business exceeding $500,000 during the relevant period.  *See id.* ¶¶ 14, 17, 20.  Courts in this District have held that conclusory allegations similar to those made here with respect to

enterprise coverage are sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate" the enterprise was engaged in interstate commerce. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see also Santos v. Cancun & Cancun Corp.*, No. 21-CV-192, 2022 WL 1003812, at *4 (E.D.N.Y. Feb. 17, 2022); *Jiao*, 2020 WL 2527588, at *5-*6. Further, courts in this District have routinely inferred, even absent specific allegations, that companies engaged in the supermarket industry are engaged in interstate commerce. *See Pena v. Super Econ. One Way Supermarket Corp.*, No. 20-CV-3060, 2021 WL 4755603, at *5 (E.D.N.Y. Sept. 8, 2021) ("Given Super Economics' annual sales, it can be inferred that some of the materials sold in the supermarket originated in interstate commerce."), *report and recommendation adopted*, 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021); *Baizan Guerrero*, 2019 WL 4889591, at *5 ("it is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales" is subject to enterprise coverage); *Kliger v. Liberty Saverite Supermarket, Inc.*, No. 17-CV-2520, 2018 WL 4782342, at *3 (E.D.N.Y. Sept. 17, 2018), *report and recommendation adopted*, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018).

Accordingly, this Court recommends finding that the allegations in plaintiff's Amended Complaint are sufficient to conclude that plaintiff's employment falls under the FLSA's protections.

### C.    NYLL

As with the FLSA, the NYLL broadly defines an "employer." The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.*

21

§ 190(2).  Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA."  *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).  Accordingly, the Court finds that plaintiff was jointly employed by the individual defendants and the corporate defendants under the NYLL.  *See Mondragon*, 2019 WL 2551536, at *7-*9; *see also Syed v. S & P Pharm. Corp.*, No. 21-CV-6000, 2023 WL 2614212, at *4 (E.D.N.Y. Mar. 23, 2023) (applying "single integrated enterprise" doctrine to NYLL claims).

### D.    Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at a minimum hourly rate.  *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652.  The applicable minimum wage under the NYLL for a New York City employer with ten or fewer employees[6] was $9.00 per hour in 2016, $12.00 per hour in 2018, $13.50 per hour in 2019, and $15.00 per hour since December 31, 2019.  *See* N.Y. Lab. Law § 652(1)(a)(ii).  Given that the minimum wage under the NYLL is higher than that of the FLSA for all relevant time periods,[7] this Court analyzes plaintiff's minimum wage entitlement under the NYLL.  *See* 29 C.F.R. § 778.5; *Fermin*, 93 F. Supp. 3d at 43.

To determine whether plaintiff was paid the applicable minimum wage, the Court must first determine the plaintiff's regular hourly wage rate.  *See Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *11 (E.D.N.Y. Mar. 21, 2023); *Xin Long Lin v.*

---

[6] In seeking damages, plaintiff "presume[d]" that defendants qualify as a small employer.  *See* Damages Calc. at 1.  In the absence of any information regarding the size of the employer's workforce, the Court applies the rate for small employers.  *See Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17-CV-7095, 2019 WL 4739047, at *7 n.6 (E.D.N.Y. June 12, 2019), *report and recommendation adopted*, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019).

[7] The applicable federal minimum wage rate was $7.25.  *See* 29 U.S.C. § 206(a)(1)(C).

*New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).  Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract."  29 C.F.R. § 778.108.  Because plaintiff was compensated on a weekly basis, the regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate."  *Id.* § 778.113(a).

Under the FLSA, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (internal quotation marks and citation omitted); *see Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132, 2021 WL 7830146, at *8 (E.D.N.Y. Aug. 24, 2021); *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.") (internal quotation marks and citation omitted).  Similarly, a NYLL regulation provides that a restaurant employee's regular hourly rate is determined by dividing the employee's weekly earnings by the lesser of forty hours or the hours actually worked.[8]  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (where "an

---

[8] Under the applicable regulations, a restaurant is defined as "any eating or drinking place that prepares and offers food or beverage for human consumption."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1(b).  Plaintiff alleges that his "duties included food preparation, stocking, dishwashing, receiving deliveries, manning the cash register and cleaning."  Am. Compl. ¶ 33; *see* Hearing Tr. at 11 ("I used to work the deli, register, do the fridge, cleaning.").  Accordingly,

employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week").

Contrary to the rebuttable presumption and the applicable NYLL regulation, plaintiff incorrectly calculated his regular rate based on all hours that he worked during the work week. *See* Damages Calc. at 1-2. Since the governing law requires that the Court calculate plaintiff's regular rate of pay by using the lesser of 40 hours or the hours actually worked, the Court recommends calculating plaintiff's regular rate by dividing plaintiff's weekly wages by 40 hours. *See Chen*, 2023 WL 2583856, at *12-*13; *Urena v. 0325 Tuta Corp.*, No. 20-CV-3751, 2022 WL 4284879, at *4 (S.D.N.Y. Sept. 16, 2022), *report and recommendation adopted*, 2022 WL 17249362 (S.D.N.Y. Nov. 28, 2022); *Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *4 (E.D.N.Y. July 19, 2019), *aff'd*, 990 F.3d 251 (2d Cir. 2021).

From April 21, 2016 to January 2017, defendants paid plaintiff $600 per week. *See* Am. Compl. ¶ 40; Rodriguez Aff. ¶ 11. From December 2017 to April 2021, defendants paid plaintiff $700 per week. *See* Am. Compl. ¶ 41; Rodriguez Aff. ¶ 13. From April 2021 to August 2021, defendants paid plaintiff $800 per week. *Id*. ¶ 42; Rodriguez Aff. ¶ 14. Calculating plaintiff's

---

the Court finds that plaintiff is a restaurant worker for purposes of the NYLL. *See Perez v. 50 Food Corp.*, No. 17-CV-7837, 2019 WL 7403983, at *7 n.6 (S.D.N.Y. Dec. 4, 2019) (stating that employees are properly classified in the hospitality industry when they perform such tasks as "making salads, preparing sandwiches and other food items and cleaning the premises"); *Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-CV-8333, 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016) (defendants' "'deli/salad bar' at which Plaintiff worked as a 'sandwich maker, cashier, and soda stocker' qualifies as a 'restaurant' under the broad definition set forth in [NYLL regulations]"), *report and recommendation adopted*, 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *see also Pareja v. 184 Food Corp.*, No. 18-CV-05887, 2021 WL 3109621, at *8 (S.D.N.Y. July 22, 2021) (classifying fruit stockers at a supermarket as employees in the hospitality industry), *report and recommendation adopted*, 2021 WL 3501229 (S.D.N.Y. Aug. 9, 2021).

regular rate based on a 40-hour work week, plaintiff's regular rate of pay until January 2017 was $15 per hour ($600/40); from December 2017 until April 2021, his regular rate of pay was $17.50 per hour ($700/40); and after April 2021 his regular rate was $20 per hour ($800/40 hours). Since plaintiff's regular rate was higher than the applicable minimum wage throughout his employment, the Court recommends denying plaintiff's claim for unpaid minimum wages.

### E.    Overtime Wages

Under the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2). Here, plaintiff alleges that he regularly worked for defendants for 80 hours per week, but was not paid the requisite premium for those overtime hours. Thus, plaintiff has sufficiently alleged claims against the defendants for unpaid overtime under the FLSA and the NYLL.

### F.    Spread-of-Hours

Another area in which the NYLL differs from the FLSA is the NYLL's requirement that an employer pay employees a "spread-of-hours" premium that is equal to "one additional hour of pay at the basic minimum hourly rate" for each day an employee works in excess of ten hours. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6; *see also id.* § 142-2.4 (non-hospitality workers). The spread-of-hours mandate applies to "all employees in restaurants . . . , regardless of a given employee's regular rate of pay." *Id.* § 146-1.6(d). "A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in excess of ten hours on a given day but did not receive spread of hours pay." *See Martinez v.*

*Golden Flow Dairy Farms Inc.*, No. 21-CV-2421, 2024 WL 1242639, at *6 (E.D.N.Y. Mar. 22, 2024) (internal quotation marks and citation omitted).

In the Amended Complaint, plaintiff seeks recovery for spread-of-hours compensation. *See* Am. Compl. ¶¶ 71-72.  However, in the Amended Complaint and his affidavit, plaintiff states only that he worked a regular schedule of 10 hours per day, seven days per week, and that he regularly was required to work an additional 10 hours per week.  *See id.* ¶¶ 35-39; Rodriguez Aff. ¶¶ 6-9.  In his damages calculation, plaintiff omitted any amount for spread of hours damages.  *See* Dkt. 34-4.  Here, absent any allegation as to the specific dates or how often plaintiff worked more than ten hours in one work day, the Court recommends denying plaintiff's claim for spread of hours damages.  *See Burns v. Scott*, 635 F. Supp. 3d 258, 277 (S.D.N.Y. 2022) (finding that plaintiff has failed to provide a sufficient basis to recover spread-of-hours damages where he alleged that he "worked seven days a week and on average [he] worked seventy (70) hours a week or more"); *Suriel v. Cruz*, No. 20-CV-8442, 2022 WL 1750232, at *14 (S.D.N.Y. Jan. 10, 2022) (plaintiff "does not allege, however, when or on how many occasions she worked more than ten hours per day, nor does her Damages Submission include any amount of claimed spread-of-hours damages"), *report and recommendation adopted*, 2022 WL 1751163 (S.D.N.Y. May 31, 2022).

### G.    Wage Theft Prevention Act

The NYLL's WTPA requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . .; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay."  N.Y. Lab. Law § 195(1)(a).  In addition, section

195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages."  N.Y. Lab. Law § 195(3).

Plaintiff sufficiently alleges that the defendants failed to provide him with the wage notice required by the WTPA, section 195(1)(a) of the NYLL.  In addition, the Amended Complaint sufficiently alleges that defendants failed to provide plaintiff with a proper wage statement, in violation of section 195(3) of the NYLL.  Therefore, plaintiff has adequately stated claims for violations of the WTPA by the defendants.  *See Gunthorpies v. I.M. Grp., LLC*, No. 21-CV-5140, 2024 WL 2031191, at *8 (E.D.N.Y. Apr. 11, 2024), *report and recommendation adopted*, 2024 WL 2022688 (E.D.N.Y. May 7, 2024) (Ross, J.); *Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *15 (E.D.N.Y. Mar. 1, 2022).[9]

## III.    Relief

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  "Because the extent of the damages pleaded by a

---

[9] Some courts in this District have found that a plaintiff lacks Article III standing to bring claims for wage statement and notice violations.  *See, e.g., Cuellar v. Kings Juice Bar Deli Inc.*, No. 23-CV-4293, 2024 WL 3063792, at *1 (E.D.N.Y. June 20, 2024).  However, this Court agrees with those courts that have found that the concrete harm required for Article III standing is present because the WTPA provides a safeguard for employees to recover unpaid wages through the use of written notices regarding their rate of pay.  *See Gunthorpes*, 2024 WL 2031191, at *8; *Isayeva v. Diamond Braces*, No. 22-CV-4575, 2024 WL 1053349, at *16-*17 (S.D.N.Y. Mar. 11, 2024); *Bueno v. Buzinover*, No. 22-CV-2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023).

plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Trustees of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).  Plaintiff must establish that he is entitled to the damages sought for violations of the FLSA and NYLL.

### A.     Unpaid Overtime Compensation

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him [or her]." *Fan*, 2019 WL 1549033, at *9 (internal quotation marks and citation omitted).  Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn statements "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed," satisfies a plaintiff's burden of establishing how many hours he or she worked and how much he or she was paid.  *See Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *8 (E.D.N.Y. Mar. 31, 2015) (relying on plaintiffs' sworn declarations as to rates of pay and estimates of hours worked).  "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Espinoza*, 2022 WL 987429, at *15; *Fan*, 2019 WL 1549033, at *9.

Plaintiff has submitted his own sworn affidavit describing the dates of his employment, along with average hours worked and the amount of his wages. *See* Rodriguez Aff. ¶¶ 6-15; *see also* Hearing Tr. at 10-13. In light of defendants' default, plaintiff's evidence on damages stands uncontroverted, and plaintiff has provided a sufficient basis upon which to determine damages.

Under the FLSA and the NYLL, an employer must pay an employee overtime compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata*, 723 F.3d at 200 (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL). "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Baizan Guerrero*, 2019 WL 4889591, at *8 (internal quotation marks and citation omitted).

Here, plaintiff sufficiently demonstrates that the defaulting defendants did not pay him any overtime compensation during his employment. *See* Rodriguez Aff. ¶ 16. Plaintiff states that, during a typical week, he worked 80 hours per week. *See id.* ¶ 9. Thus, plaintiff should have received overtime pay for 40 hours per week.

From April 21, 2016 to December 31, 2016 (or 36 weeks and 3 days), plaintiff should have been compensated for 40 hours per week at an overtime rate of $22.50 ($15 x 1.5 = $22.50). For this period, plaintiff is owed **$32,787.00** total ($22.50 x 40 hours x 36.43 weeks = $32,787.00).

From January 1, 2018[10] to March 31, 2021[11] (or 169 weeks and 3 days), plaintiff should have been compensated for 40 hours per week at an overtime rate of $26.25 ($17.50 x 1.5 = $26.25). For this period, plaintiff is owed **$177,901.50** total ($26.25 x 40 hours x 169.43 weeks = $177,901.50).

From April 1, 2021 to August 21, 2021[12] (or 20 weeks and 3 days), plaintiff should have been compensated for 40 hours per week at an overtime rate of $30 ($20 x 1.5 = $30). For this period, plaintiff is owed **$24,516.00** total ($30 x 40 hours x 20.43 weeks = $24,516.00).

In sum, this Court recommends awarding plaintiff a sum of **$235,204.50** in unpaid overtime wages.[13]

### B.    Statutory Damages under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule. Violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Furthermore, section 195(3) of the NYLL

---

[10] Although plaintiff states that he returned to work for defendants in December 2017, he has not sought damages for December 2017. *See* Rodriguez Aff. ¶ 12; Damages Calc. at 1.

[11] Plaintiff does not provide the precise date when his weekly pay increased from $700 per week to $800 per week. *See* Rodriguez Aff. ¶¶ 13-14 ("From December 2017 until April 2021, Defendant paid me seven hundred dollars ($700.00) per week. From April 2021 until late August 2021, Defendants paid me eight hundred dollars ($800.00) per week."). Therefore, the Court estimates that plaintiff was paid $700.00 per week through March 31, 2021 and was paid $800.00 per week starting on April 1, 2021. That assumption is more generous to plaintiff than his counsel's calculation, which assumes that plaintiff's salary increased in mid-April 2021. *See* Damages Calc. at 2.

[12] Although plaintiff did not provide a specific date in August 2021 when his employment ended, the Court adopts the date plaintiff used in his Damages Calculation (*i.e.*, August 21, 2021).

[13] The damage award recommended here is significantly higher than the damages requested by plaintiff due to plaintiff's incorrect method of calculating the regular rate of pay.

requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotation marks and citation omitted). After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000. N.Y. Lab. Law § 198(1-d).

Here, plaintiff alleges that he never received a wage notice or wage statements from the defaulting defendants at any point throughout the course of his employment. *See* Rodriguez Aff. ¶¶ 18-19. Because plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, this Court recommends awarding plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000**. *See Sarmiento Perez*, 2020 WL 1364908, at \*6; *Jin*, 2019 WL 3244187, at \*5.

### C.    Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA. *See* 29 U.S.C. § 260. Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of such underpayments found to be due . . . unless the employer proves a good faith basis to

believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at \*14 (E.D.N.Y. Apr. 7, 2020) (internal quotation marks and citation omitted). However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Id.*; N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith. *See Lu Fan*, 2019 WL 1549033, at \*11. As this Court has calculated plaintiffs' damages according to the NYLL, plaintiff is entitled to 100 percent of his unpaid wages as liquidated damages. Accordingly, this Court recommends awarding plaintiff **$235,204.50** in liquidated damages.

###### D.    Prejudgment Interest

Plaintiff seeks an award of prejudgment interest pursuant to New York law. "Prejudgment interest is compensatory in nature and is not available where a plaintiff successfully claims liquidated damages under the FLSA because the plaintiff is considered to have been appropriately compensated through the award of liquidated damages." *Nam v. Ichiba Inc.*, No. 19-CV-1222, 2021 WL 878743, at \*9 (E.D.N.Y. Mar. 9, 2021) (citing cases). "The NYLL, however, explicitly provides that a successful plaintiff should receive both liquidated damages and prejudgment interest." *Id.; see* N.Y. Labor Law § 198(1-a). Accordingly,

prejudgment interest is available for unpaid overtime wages under the NYLL, but not on liquidated damages or amounts awarded under the WTPA. *See Gunthorpes*, 2024 WL 2031191, at \*8; *Nam*, 2021 WL 878743, at \*9. This Court recommends awarding prejudgment interest here because plaintiffs are receiving damages only under the NYLL. *See Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at \*12 n.21 (E.D.N.Y. Nov. 29, 2021), *aff'd*, 2023 WL 2395995 (2d Cir. Mar. 8, 2023).

Prejudgment interest on NYLL damages is calculated at a rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004; *Espinoza*, 2022 WL 987429, at \*19. In cases in which damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts have discretion in determining a reasonable date from which to award prejudgment interest. *See Nam*, 2021 WL 878743, at \*9.

Here, plaintiff incurred damages at various times throughout his employment. Thus, the Court finds that the midway point between when plaintiff began and ceased working for defendants is a reasonable intermediate date for purposes of calculating prejudgment interest.[14] *See Gunthorpes*, 2024 WL 2031191, at \*8; *Espinoza*, 2022 WL 987429, at \*19.

Although plaintiff did not provide an interest calculation, plaintiff requests damages from April 21, 2016 to August 21, 2021. The mid-point of plaintiff's employment with defendants is approximately December 21, 2018. Accordingly, this Court recommends awarding plaintiff prejudgment interest from December 21, 2018 until the entry of judgment. Therefore, the Court

---

[14] Although plaintiff had two terms of employment, the Court recommends using a single intermediate date, rather than dividing up plaintiff's terms of employment and using different midpoints. *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 390–91 (E.D.N.Y. 2012).

recommends awarding plaintiff prejudgment interest at a daily rate of $58.00 (0.09 x $235,204.50 / 365 = $58.00) from December 21, 2018 through the date judgment is entered.[15]

**Conclusion**

For the reasons set forth above, this Court respectfully recommends:  (1) granting plaintiff's motion for a default judgment against defendants Lucky Lotto Grocery Deli Corp., NY Deli Grill Corp., Flatbush Garden Deli Corp., Saleh A. Muthana and Saddam Gharama, jointly and severally, and entering judgment against the defaulting defendants; (2) awarding plaintiff damages totaling **$480,409.00**, consisting of **$235,204.50** in unpaid overtime compensation, **$10,000** in statutory damages, and **$235,204.50** in liquidated damages; and (3) awarding plaintiff prejudgment interest, as described above.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendants at their last known address and to file proof of service on ECF by **July 22, 2024**.  Any objections to the recommendations made in this Report must be filed with the Honorable Allyn R. Ross within 14 days after the filing of this Report and Recommendation and, in any event, on or before **August 1, 2024**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small*

---

[15] Plaintiff does not seek an award of attorneys' fees.  *See* Minute Entry dated April 20, 2023.

*v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
      July 18, 2024

                                      s/ James R. Cho
                                      James R. Cho
                                      United States Magistrate Judge